IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Michael D. James, #294004, ) | CIVIL ACTION NO. 9:15-0625-TLW-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Leroy Cartledge, Warden; Scott Lewis, ) | |
| Assistant Warden of Security; NFN Mursier, ) | |
| Major of Security; and Officer Goble, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections (SCDC), alleges violations of his constitutional rights by the named Defendants.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. on September 2, 2015. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on September 3, 2015, advising Plaintiff of the importance of a dispositive motion and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case. Plaintiff thereafter filed a memorandum in opposition to the Defendants' motion on October 7, 2015, to which the Defendants filed a reply memorandum on October 14, 2015. Plaintiff filed an additional response, with attached exhibits, on November 17, 2015.

1



The Defendants' motion is now before the Court for disposition.[1]

**Background and Evidence**

Plaintiff alleges in his verified Complaint[2] that in June 2012 he was transferred to the McCormick Correctional Institution (MCI) and placed in the general population, Unit F-2.[3] Plaintiff alleges that on June 20, 2012 a gang riot occurred in front of his cell. Plaintiff alleges that the "Wing Officer" had left his post, leaving the wing and all inmates "unsecured", and that over twenty (20) inmates were running around with homemade knives. Plaintiff alleges that the members of two gang organizations were fighting each other, with several inmates being stabbed requiring that they be airlifted to a nearby hospital. Plaintiff alleges that, thereafter, on June 21, 2012 he wrote and sent request forms to all "top security officials at MCI, including the Defendants Warden Cartledge, Associated Warden of Security Lewis, and Major of Security Mursier".

Plaintiff alleges that in these request forms Plaintiff advised these officials that Unit F-2 was a "dangerous environment" where inmates made knives daily and attacks happened regularly. Plaintiff alleges he asked to be moved from Unit F-2 to a safer unit, but that none of these Defendants responded to Plaintiff's requests, even though all of these Defendants were well aware that Unit F-2 had a history of being a very violent, dangerous environment, and where both day and night shift officers had "bad habits" of leaving their posts with inmates being "unsecured" for long

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2]In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

[3]Plaintiff is currently incarcerated at the Ridgeland Correctional Institution (RCI).



periods of time.

Plaintiff alleges that on August 11, 2012, he was in his cell when three inmates wearing masks opened Plaintiff's unlocked cell door and entered his cell. Plaintiff alleges he was "attacked, pulled from his cell, beaten, kicked and stabbed several times". Plaintiff alleges that he "screamed for help", but that the Defendant Wing Officer Goble had left his post. Plaintiff alleges that if a wing officer had been on the wing at the time of this attack, they would have heard Plaintiff's screams for help and could have stopped the attack before Plaintiff had been stabbed "several times". Plaintiff alleges that as a result of this attack he is now disabled and takes pain relief medications that he will have to take for the rest of his life. Plaintiff seek monetary damages. See generally, Plaintiff's Verified Complaint.

Plaintiff has attached several exhibits to his Complaint, to include copies of this Step 1 and Step 2 grievance forms relating to the incident of August 11, 2012, a medical summary form showing where he was treated for wounds following an altercation on that date, and copies of what purport to be some newspaper articles concerning incidents that have occurred at MCI. See generally, Plaintiff's Exhibits.

In support of summary judgment in this case, the Defendant Cartledge has submitted an affidavit wherein he attests that he is the Warden at MCI, where he is responsible for the overall operation of the Institution. Cartledge attests that he receives numerous requests from inmates (an average of thirty or more) each day on a variety of issues, and that while it is possible he received a Request to Staff from the Plaintiff he has no specific recollection or record of ever receiving a request from the Plaintiff asking to be moved from Unit F-2. In any event, Cartledge further attests that inmates are not moved from one unit to another simply based on a request, as inmates are placed in dorms based on a variety of factors and if they were moved from one dorm or cell to another upon



request, the administration would have time to do little else other than move inmates from one area to another.  Cartledge further attests that inmates can be requesting to be moved from improper purposes, and that he was not aware of any reason Plaintiff was as risk by remaining in Unit F-2 as opposed to any other Unit.

Cartledge attests that Plaintiff is correct that there was a incident in Unit F-2 in June 2012 which involved multiple inmates.  Cartledge attests that MCI is a Level III institution, which is the most secure level in the SCDC, and is designed primarily to house violent offenders with longer sentences as well as inmates who exhibit behavioral problems.  Cartledge attests that, unfortunately, incidents of this nature can occur in any living unit at a Level III institution, that the inmates in Unit F-2 are of the same custody level as the other general population inmates at MCI, and that there would have been no basis to transfer Plaintiff to another Unit just because an altercation had occurred there.  Cartledge also attest that at no time prior to this incident did Plaintiff state to him, either in person or in writing, that he had been threatened by any other inmate or that he was in danger of any kind, that he had also not heard from any source that Plaintiff was in danger or that any threats had been made against him, and that if Plaintiff had notified him in a Request to Staff that he [Plaintiff] had been threatened by another inmate or felt he was at risk from another specific inmate, he [Cartledge] would have investigated the matter and taken any necessary actions. Cartledge also attests that if Plaintiff felt he was in danger he could have requested protective custody, and that based on his review of Plaintiff's records, Plaintiff did not ever request protective custody.

Finally, Cartledge attests that the incident of August 11, 2012 occurred on a Saturday when he was not present at the institution, but that he has nevertheless reviewed the records relating to this matter and determined that Plaintiff was initially charged with fighting with a weapon,



4

although the charges against the Plaintiff were subsequently dropped because time had expired before a hearing could be held.  See generally, Cartledge Affidavit.

The Defendant Frank Mursier has also submitted an affidavit wherein he attests that he is a Major at MCI, where he has broad supervisory responsibilities.  Mursier attests that he receives numerous requests from inmates each day on a variety of issues, and that while it is possible he received a Request to Staff from the Plaintiff he has no specific recollection or record of receiving a request from Plaintiff asking to be moved from Unit F-2, nor was he aware of any reason Plaintiff was at risk by remaining in Unit F-2.  Mursier attests that at no time prior to "this incident" (presumably the incident of August 2012) did the Plaintiff ever state to him either in person or in writing that he had been threatened by any other inmate or that he was in danger of any kind, nor had he [Mursier] heard from any source that Plaintiff was in danger or that any threats had been made against him.  Mursier attests that if Plaintiff had notified him in a Request to Staff that he had been threatened by another inmate or felt he was at risk from another specific inmate, he would have investigated the matter and taken any necessary actions.  Further, as was noted by Cartledge in his affidavit, Mursier attests that if Plaintiff felt he was in danger he could have requested protective custody, but that based on his [Mursier's] review of Plaintiff's records, Plaintiff did not ever request placement in protective custody.  Finally, Mursier attests that the incident at issue occurred on a Saturday, and that he was not present at the Institution on that date.  See generally, Mursier Affidavit.

The Defendant Scott Lewis has submitted an affidavit wherein he attests that he is the Associate Warden at MCI, where he has broad supervisory responsibilities.  As with Cartledge and Mursier, Lewis attests that he receives numerous requests from inmates each day on a variety of issues, and that while it is possible he received a Request to Staff from the Plaintiff he has no



specific recollection or record of ever having received a request from the Plaintiff asking to be moved from Unit F-2, nor was he aware of any reason Plaintiff was at risk by remaining in Unit F-2. Lewis further attests that at no time prior to this incident did the Plaintiff ever state to him either in person or in writing that he had been threatened by any other inmate or that Plaintiff was in danger of any kind, nor had he heard from any source that Plaintiff was in danger or that any threats had been made against him.  Lewis attests that if Plaintiff had notified him in a Request to Staff that he [Plaintiff] had been threatened by another inmate or felt he was at risk from another specific inmate, he [Lewis] would have investigated the matter and taken any necessary actions.  Lewis further attests that if Plaintiff felt he was in danger, he could have requested protective custody, but that based on his review of Plaintiff's records, Plaintiff never requested protective custody status. Finally, Lewis attests that "this incident" (presumably the August 2012 incident) occurred on a Saturday, and that he was not present at the Institution on that date.  See generally, Lewis Affidavit.

The Defendant Garrett Goble has submitted an affidavit wherein he attests that he is an Officer at MCI, and that on August 11, 2012 was assigned to the A Wing of Unit F-2.  Goble attests that Plaintiff was housed on the A wing of Unit F-2 at that time.  Goble attests that at the time indicated in the Complaint he had opened the wing door to allow inmates to leave the Unit to go to the cafeteria for dinner, and that while standing inside the A wing of Unit F-2 he observed through the window of the wing door the Plaintiff backing away from another inmate, Ryan Wright, and coming through the wing door from the B Wing of Unit F-2 into the sally port.  Goble attests that inmate Wright was swinging a piece of electrical cord with two padlocks tied to it, while Plaintiff had a metal rod that appeared to have been broken from a cell locker.  Goble attests that the wing doors remain locked except during inmate movements, such as when inmates are going to the cafeteria, and that this incident occurred sometime around four or four thirty in the afternoon, when



inmates were going to the cafeteria for dinner so the wing doors were unlocked.

Goble attests that Plaintiff was entering the sally port area between the two wings when he first saw him, at which time he [Goble] immediately called for First Responders to come to the scene and assist. Goble attests that he would have used chemical munitions to attempt to separate the inmates, but that they were already separating at this time, with several inmates actually grabbing Inmate Wright and pulling him away from the Plaintiff. Goble attests that Plaintiff continued to back away and went into the A wing. Goble attests that he followed the Plaintiff and locked the door behind them, as he wanted to make sure that the two inmates remained separated. Goble attests that he also went into the A wing because Plaintiff appeared to be wounded, and he wanted to render medical attention and also wanted to make sure that there were not inmates housed in the A wing who might try to harm the Plaintiff.

Goble attests that after locking the wing door, he turned around and saw the Plaintiff going up the stairs towards his cell and immediately started towards the Plaintiff's cell. Goble attests that when he got the Plaintiff's cell, Plaintiff had already come back outside and was lying on the ground. Goble attests that Plaintiff was injured and bleeding, that he also saw the weapon Plaintiff had been using lying in his cell, and there was blood in his cell. Goble attests that he then locked the door to Plaintiff's cell and radioed for assistance to have Plaintiff taken to the medical department. Plaintiff was then taken by other officers to the medical department, as he [Goble] was assigned to the wing and not allowed to leave the wing.

Goble attests that although the incident began on the B Wing, Plaintiff was assigned to the A wing of Unit F-2. Goble attests that it is his recollection that Inmate Wright lived on B wing, and that inmates are not allowed to travel from one wing to the other without specific authorization. However, as previously noted, the wing doors are unlocked during times of inmate



movement such as when inmates are going to the cafeteria for meals, but Goble attests he does not recall Plaintiff being provided specific authorization to be on B wing. Goble attests that while it is possible that Plaintiff was able to slip onto the B wing when the doors were opened for dinner, Plaintiff was not supposed to have been on the B wing at the time the incident occurred.

Goble attests that after Plaintiff was taken to the medical department, he packed and inventoried Plaintiff's property, and that it his recollection that Plaintiff did not return to MCI. Goble attests that he does not know how the altercation between Plaintiff and Inmate Wright began, but that it is not possible that the incident began in Plaintiff's cell, because he [Goble] was on the A wing when he first observed the inmates fighting. Goble further attests that this appeared to be a fight between two inmates, both of whom were in possession of weapons.

Goble attests that at no time prior to this incident did the Plaintiff ever state to him that he [Plaintiff] had been threatened by any other inmate or that he was in danger of any kind. Goble also attests that he had not heard from any other inmate or any source that Plaintiff was in danger or that any threats had been made against the Plaintiff. Further, Plaintiff and Inmate Wright were the only two inmates he observed involved in this altercation. See generally, Goble Affidavit.

As attachments to his memorandum in opposition, Plaintiff has again attached a copy of the medical summary page for August 11, 2012, showing where he was seen in the medical department at about 5:17 p.m. following an altercation in the dorm. Plaintiff has also again attached copies of what are apparently newspaper articles discussing incidents that have occurred at MCI (one from 2002, one from 2010, and one from 2012). Plaintiff has also attached a copy of some responses to his interrogatories. As attachments to his supplemental memorandum, Plaintiff has attached some more interrogatory responses. See generally, Plaintiff's Exhibits.



**Discussion**

As noted, the Defendants have moved for summary judgment on all of Plaintiff's claims. Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992).

Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the arguments and evidence presented pursuant to these standards, the undersigned finds and concludes that the Defendants' motion for summary judgment should be granted.

**I.**

**(Defendants Cartledge, Lewis and Mursier)**

As employees of the State of South Carolina, the Defendants Cartledge, Lewis and Mursier are subject to suit for damages under § 1983 in their individual capacities. However, in



order to proceed on a failure to protect claim against these three Defendants, Plaintiff must have evidence sufficient to give rise to a genuine issue of fact as to whether any of these three Defendants was deliberately indifferent to a specific known risk of harm to the Plaintiff.  See Pruitt v. Moore, No. 02-395, 2003 WL 23851094, at * 9 (D.S.C. Jul. 7, 2003)[Deliberate or callous indifference on the part of prison officials to a specific known risk of harm states an Eighth Amendment claim], cert. denied, 2004 WL 232748 (4th Cir. 2004); Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. Mar. 11, 1997) ["A defendant acts with deliberate indifference . . . if he or she 'knows of and disregards' an excessive risk to inmate health or safety].  Pursuant to this standard, the Defendant against whom the claim is being asserted "must have both been aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and . . . must have also drawn that inference".  Farmer v. Brennan, 511 U.S. 825, 837 (1994).

       The Supreme Court has held that a plaintiff can make out a prima facie case of deliberate indifference by showing "that a substantial risk of [serious harm] was long standing, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it".  Farmer, 511 U. S. at 842.  However, this "deliberate indifference" standard is a "very high standard - a showing of mere negligence will not meet it". Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999); see also A.P. ex rel. Bazerman v. Feaver, No. 04-15645, 2008 WL 3870697 at *12 (11th Cir. Aug. 21, 2008)["[D]eliberate indifference requires a much higher standard of fault than mere or even gross negligence . . . ."]; Danser v. Stanberry, 772 F.3d 340, 346-347 (4th Cir. 2014)[Plaintiff must "establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" and "that the prison official allegedly violating [P]laintiff's constitutional rights had a sufficiently culpable state of mind"] (internal

10



citation omitted) [vacating district court's order denying summary judgment and remanding with instructions to enter summary judgment].

Here, Plaintiff has failed to present any evidence to show that any of these three Defendants had any specific knowledge that he was in danger of being attacked by any other inmates, either on August 11, 2012, or at any time before that date. Plaintiff has submitted copies of what purport to be some newspaper articles concerning incidents that have occurred at MCI (a maximum security prison), presumably to show that MCI is a dangerous place; however, these incidents are not only far apart in time (discussing four (4) incidents that occurred at MCI over a thirteen year period of time), but none of them concern the Plaintiff. The fact that maximum security prisons are dangerous places where incidents of violence sometimes occur does not mean that an individual inmate can assert or show the requisite knowledge of a substantial risk with the required culpable state of mind by a prison administrator just because they may themselves end up being in an altercation. Cf. Parrish v. ex rel. Lee v. Cleveland, 372 F.3d 294, 302-303 (4th Cir. 2004)[Situation must be evaluated as the officers reasonably perceived it, "not as it now may be perceived enlightened by the benefit of hindsight"]; see also Irvin v. Owens, No. 10-1336, 2012 WL 1534787 at * 4 (D.S.C. Apr. 30, 2012) [General statement that Plaintiff believed conditions at Institution placed him in danger not sufficient]; Buff v Dwyer, No. 06-138, 2010 WL 3733979 at * 5 (E.D. Mo. Sept. 20, 2010); Wilkins v. Poole, 706 F.Supp. 2d 314, 318 (W.D.N.Y. 2010) [Granting summary judgment where Plaintiff's claim was premised solely on his argument that supervisory personnel with general awareness of dangerous prison conditions should have been able to infer the specific threat to the Plaintiff].

It is also worth noting that while Plaintiff states in his Complaint that he had sent Request to Staff Member forms to these Defendants complaining about a high rate of violence and



11

asking to be transferred, the Defendants all attest that they have no record of ever having received any such Request to Staff forms, and Plaintiff has himself failed to provide as exhibits copies of any such Requests or notifications. House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; Nat'l Enters., Inc. v. Barnes, 201 F.3d 331, 335 (4th Cir. 2000)[Holding that a self-serving affidavit was insufficient to survive summary judgment]; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"].

Further, even assuming for purposes of summary judgment that Plaintiff *had complained* to these three Defendants about the conditions on his Unit and asked to be transferred, that would not make any of these three Defendants individually liable for the incident that occurred on August 11, 2012, an incident for which there is no evidence that any of these Defendants had any knowledge of beforehand. Farmer, 511 U.S. at 842 [To establish a prima facie case of deliberate indifference a plaintiff must show "that a substantial risk of [serious harm] was long standing, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it"]; Gaul v. City of Hammond, Ind., No. 10-20, 2013 WL 275590 at * 6-7 (N.D.Ind. Jan. 24, 2013) [Finding request to be removed from cell block because of general harm allegations, without more, was not sufficient to survive summary judgment]; Wilkins, 706 F.Supp2d at 318; Powell v. Owens, No. 14-87, 2014 WL 2207968 at * 5 (M.D.Ga. May 28, 2014)[General allegations of "'ready availability' of knives and other weaponry, an atmosphere of violence and terror, and the level of control inmates has over the staff" are too general and conclusory to show officials were subjectively aware of substantial risks of harm], adopted by,



2014 WL 3535508 (11th Cir. July 16, 2014); see also Drakeford v. Thompson, No. 09-2239, 2010 WL 4884897, at * 3 (D.S.C. November 24, 2010), citing Larken v. Perkins, 22 Fed. Appx. 114, 115 (4th Cir. 2001)[Noting that non-movant's "own, self-serving affidavit containing conclusory assertions and unsubstantiated speculation, . . . [is] insufficient to stave off summary judgment"].

Therefore, the Defendants Cartledge, Lewis and Mursier are entitled to summary judgment in this case.

## II.

### (Defendant Goble)

With respect to Plaintiff's claims against the Defendant Goble, the evidence before this Court presents two sharply divergent accounts of what happened on August 11, 2012. Plaintiff attests in his verified Complaint that on that date his cell door had been left unlocked, and that three masked inmates were able to enter his cell while he was sleeping, where they proceeded to beat and stab him. Plaintiff further alleges that even though he "screamed for help" no help was forthcoming because Goble had improperly left his post on the wing, as a result of which Plaintiff incurred serious injuries. In support of his allegations, Plaintiff has provided copies of a medical summary report from that date showing where he was treated for multiple stab wounds following an altercation in the dorm, as well as his grievance documents wherein Plaintiff complains about having been attacked in his sleep by attackers with masks over their faces. Conversely, in his affidavit Goble presents a much different version of what happened, attesting that he *was* at his post, observed Plaintiff in an altercation with another inmate in which both inmates had weapons, and that he took prompt corrective action to come to Plaintiff's aid.

However, even assuming Plaintiff's version of events to be true for purposes of summary judgment, Plaintiff's claim that Goble was absent from his post at the time of the attack



is not, by itself, sufficient to state a constitutional claim. Kimball v. Benjamin, No. 14-919, 2014 WL 5796072 at * 2 (W.D.La. Nov. 6, 2014)["To the extent Defendant . . . was negligent in leaving his assigned post, mere negligence by officials in failing to protect a prisoner from an assault does not form basis for a § 1983 claim."](citing Oliver v. Collins, 914 F.2d 56, 60 (5th Cir. 1990). Plaintiff has presented no evidence that Goble was aware that he was in danger from attack on the date at issue, or had any inkling that the attack was going to occur. Cf. Houston v. Givens, No. 11-678, 2012 WL 6680294 at ** 5-6 (S.D.Ala. Dec. 4, 2012)["[B]y Plaintiff's own admission, this assault was spontaneous and unprovoked. Because this assault was spontaneous, the fact that Defendant [] was not at his assigned post at the time of the incident is of no consequence to Plaintiff's allegation, since Defendant [] could not have stopped an assault that he had no reason to anticipate occurring."]; see also Zweifel v. Jefferson Parish Correctional Center, No. 09-2997, 2009 WL 1459696 at **7-8 (E.D.La. May 26, 2009)[guard who left his post was not held responsible because no prior knowledge of specific threat]. Therefore, Plaintiff has failed to present facts sufficient to maintain this claim under § 1983. Miller v. Turner, 26 Fed.Appx. 560, 563 (7th Cir. Dec. 18, 2001) ["[A] 'mere possibility of violence' or the occurrence of a random act of violence is not sufficient to impose liability on prison officials"].

Notwithstanding the finding set forth hereinabove, Plaintiff is not without a remedy if he believes the actions of prison officials were unjustified or even negligent, as he may have a claim under state tort law or some administrative remedy he may pursue. However, the sole question before this Court is whether Plaintiff has submitted sufficient evidence to maintain a *constitutional* claim, not whether he may have a claim under some state law or administrative procedure. See DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; Baker v. McClellan, 443



U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]. He has failed to submit evidence to meet this standard. <u>Paul v. Davis</u>, 424 U.S. 693, 701 (1976) [not every claim which may set forth a cause of action under a state tort law is sufficient to set forth a claim for a violation of a constitutional right]. Therefore, the Defendant Goble, as well as the other named Defendants, are entitled to summary judgment.

### **Conclusion**

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

March 2, 2016
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

